UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DONALD BOYD,                          )
                                      )
              Plaintiff,              )
                                      )
        v.                            )          No.  4:08CV595 TIA
                                      )
MICHAEL J. ASTRUE,                    )
COMMISSIONER OF SOCIAL SECURITY,      )
                                      )
              Defendant.              )

## MEMORANDUM AND ORDER

This matter is before the Court under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income under Title XVI of the Act.  The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

## I.  Procedural History

On July 10, 2006, Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging disability beginning June 11, 2003, due to injuries sustained to the back, chest, and neck when crushed by 1,000 pounds of glass.  (Tr. 15, 78-86)  The applications were denied, and Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (Tr. 45-46, 54-59)  On October 18, 2007, Plaintiff testified at a hearing before an ALJ.  (Tr. 24-44)  In a decision dated November 8, 2007, the ALJ determined that Plaintiff was not under a disability at any time from June 11, 2003 through the date of decision.  (Tr. 11-19)  On March 13, 2008, the Appeals Council denied Plaintiff's request for review.  (Tr. 3-5)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff was represented by counsel.  Vocational Expert ("VE") Jeffrey Magrowski also testified.  The ALJ questioned the Plaintiff, who stated that he was 30 years old and completed the 10th grade.  He tried, but failed, to achieve his GED.  Plaintiff's past work experience included landscaper, warehouse worker, kitchen helper, and glass seamer.  As a glass seamer, Plaintiff took the sharp edges off of the glass by sanding.  The job involved lifting 30 to 50 pounds.  He had a worker's comp claim against the glass company pending since May 2003. Plaintiff last worked for that company on June 11, 2003.  (Tr. 28-29)

Plaintiff testified that he needed to use a cane due to severe pain in his lower back, which radiated down his leg, and weak muscles in his leg.  However, no doctor prescribed the cane. Plaintiff stated that x-rays of his back did not reveal anything wrong aside from the spina bifida he had since birth.  Although a recent doctor prescribed an MRI, insurance refused to cover the cost. Plaintiff did have an MRI of his neck in 2006, which indicated 2 bulging disks in his neck.  In addition, Plaintiff testified that he was treated for sleep apnea in 2005.  He recently stopped using a CPAP machine because he had lost weight and was sleeping better.  (Tr. 29-32)

Plaintiff also testified that in June 2007 he saw a psychiatrist, Dr. Couro, who recommended that Plaintiff undergo a fully psychological evaluation.  He received no further psychiatric treatment. Plaintiff also stated that he continued to smoke a pack of cigarettes a day and chew tobacco.  (Tr. 31-34)

Plaintiff testified that he was 6 feet tall and weighed 237 pounds.  He had recently lost 50 pounds.  Plaintiff further testified that he had been diagnosed with fibromyalgia in 2006.  However, Plaintiff was not referred to a rhuematologist for further evaluation or treatment.  With regard to

psychological problems, Plaintiff stated that he had major depression and general anxiety. He became easily frustrated, lost his concentration, was short with people, and had trouble remembering. He took Seroquel and Citalopram, which Dr. DeMitt prescribed. (Tr. 34-35)

Plaintiff's attorney also examined the Plaintiff during the hearing. Plaintiff testified that he had not worked since his injury on May 8, 2003. He became unable to work after the doctors stopped prescribing Vicodin and the pain became overwhelming. Plaintiff currently took Morphine for pain, as no prior medications provided relief. Although Plaintiff tried to return to work, his condition became worse, and he was unable to perform the functions of his job due to unbearable pain between his shoulder blades and in his neck, lower back, and chest. Plaintiff previously filed a Social Security application in 2005, and he testified that his pain level then was a 10 on a scale of 1 to 10. He tried to relieve the pain by laying on the floor, trying to do stretches, using heating pads and ice packs, and taking hot showers and baths. He received some relief from the pain over the past 6 months due to the Morphine. Plaintiff's pain had improved to 3 to 5 on the scale. However, Plaintiff also continued to take hot showers and use heating pads. He converted his chair so he could lay with his hips above his shoulders. Plaintiff testified that he spent anywhere from 30 minutes to 2 hours in the chair. He further stated that the Morphine made him lose his mind. He could read but sometime had to read it over and over. (Tr. 36-39)

Plaintiff testified that he experienced both crying spells and anxiety attacks daily, after which he sometimes went outside and smoked a cigarette. The anxiety attacks could last from 15 minutes to hours, while the crying spells lasted only for seconds. Plaintiff also stated that he had days when he was depressed unable to get up and do things. He sat in his chair for most of the day. He experienced these days once every 2 to 5 days. Plaintiff testified that he had low self-esteem as well.

With regard to his back condition and pain problems, Plaintiff stated that he had thoughts of ending his life to escape the pain on a daily basis. When he experienced these thoughts, Plaintiff tried to put his mind on something else. (Tr. 40-41)

The vocational expert, Jeffrey Magrowski, also testified at the hearing. The ALJ posed a hypothetical question, asking the VE to assume a 28 year old claimant with 10 years of education and the same past relevant work experience as the Plaintiff. If the VE assumed that the claimant could do a full range of medium work, Plaintiff could return to the kitchen work. If the hypothetical claimant could do the full range of light work, he could perform the past work of a glass grinder as performed in the national economy. However, if such claimant could only perform the full range of sedentary work, this would rule out all of Plaintiff's past relevant work. The VE noted that his testimony was consistent with the Dictionary of Occupations Titles ("DOT"). (Tr. 42-43)

Plaintiff's attorney also questioned the VE. If the hypothetical claimant also had psychological restrictions such as daily crying spells and anxiety attacks, he would be unable to maintain a regular job. The ALJ then gave Plaintiff's attorney 30 days to submit a report. (Tr. 43)

In a Function Report – Adult dated July 20, 2006 and completed by the Plaintiff, he stated that, from the time he woke up until going to bed, he made the baby breakfast; swept the floors; vacuumed; mopped; made the baby lunch; did the dishes; prepared dinner; rested; stretched and exercised; cooked dinner; took out trash; helped the kids with chores; played with the kids; and made the kids read and take baths. He took care of his wife, children, and pets. Plaintiff also reported that he was unable to sleep without drugs. He experienced some problems with personal care. He enjoyed watching TV, surfing the Internet, playing music, and fixing things. He went to the store on a regular basis. Plaintiff stated that his injury affected most of his abilities, including lifting, squatting,

bending, standing, reaching, walking, and sitting. He could only walk 10 to 100 feet before needing to rest, and he could only pay attention for 30 seconds to 3 minutes. He was afraid of moving objects. (Tr. 109-115)

### III. Medical Evidence

Plaintiff's medical records show that he was injured on May 8, 2003 while working as a general factory worker at the Old Castle Glass Company. A large, heavy stack of glass pieces fell on his back and chest. Plaintiff reported persistent pain in his right chest, upper back, and base of his neck since the incident. Plaintiff denied lower back pain or radicular pain or weakness of the extremities. Plaintiff appeared to be in moderate discomfort, and his movements were guarded due to pain. Examination of the cervical spine revealed spinous process tenderness beginning at C-6 and extending down to T-1. Dr. Ronald L. Pearson saw no significant paracervical muscle tenderness or trapezius tenderness. Plaintiff's range of motion was mildly restricted, secondary to his upper back discomfort. Dr. Pearson also noted diffuse spinous process tenderness in the thoracic region extending from T-1 down to T-8, along with bilateral paravertebral muscle tenderness with right-sided muscle spasm. Examination of the lumbar spine did not reveal any spinous process. X-rays revealed no evidence of fracture or vertebral body subluxation, nor any rib fracture or pneumothorax. Dr. Pearson assessed cervical strain; upper back strain; and acute rib cage contusion. Dr. Pearson prescribed pain medication and released Plaintiff to limited duty. (Tr. 146-47)

Plaintiff returned to the clinic on May 19, 2003 for a follow-up of his chest and upper back injuries. Plaintiff reported improvement. Dr. Pearson assessed cervical strain (resolving); improving upper back (thoracic) strain; and improving right rib cage and chest wall contusion. Dr. Pearson advised Plaintiff to continue taking his medications and to remain on limited duty. (Tr. 144-45) On

5

May 27, 2003, Plaintiff reported ongoing improvement. Dr. Pearson assessed thoracolumbar strain and right rib cage and chest wall contusion. He noted that Plaintiff would begin physical therapy and continue taking Vicodin, Ibuprofen, and Flexeril. Plaintiff could continue limited work duty. (Tr. 142-43)

Plaintiff again returned to the clinic on June 3, 2003. Plaintiff's neck pain was gone, and he continued to report improvement. Physical examination revealed only slight tenderness in the thoracic spine and thorax. Dr. Pearson assessed cervical strain (resolved); thoracic strain (resolving); and right rib cage/chest wall contusion (resolving). Dr. Pearson planned to schedule two sessions of physical therapy to start him on a home stretching/exercise program. He advised Plaintiff to continue his medications and return only on an "as needed basis." Dr. Pearson stated that Plaintiff could resume full, unrestricted work duty on June 10, 2003. (Tr. 140-41)

An MRI of Plaintiff's cervical spine conducted on July 10, 2003, revealed mild disc desiccation at the C3-C4 through C5-C6 levels; minimal diffuse disc bulge C4-C5; and tiny central T-3-T4 disc protrusion or extrusion, with mild anterior indentation of the thoracic cord. (Tr. 149) X-rays of the cervical and thoracic spines were normal. (Tr. 169-70) Thomas C. Everson, D.C., examined Plaintiff on August 19, 2003. Dr. Everson found Plaintiff to have severe right arm weakness and severe left leg weakness with orthopaedic testing. He recommended that Plaintiff undergo further diagnostic testing, including an MRI of the lumbar spine, nerve tests of both lumbar and cervical spines, radiographs of the lumbar spine, and range of motion testing of the lumbar spine. (Tr. 150)

Plaintiff continued to seek treatment for chronic back pain from July 2003 through January 2004. Plaintiff was prescribed several medications including Flexeril, Vicodin, Neurontin, Paxil, and

Darvocet. (Tr. 151-64) An MRI of Plaintiff's thoracic spine conducted on September 10, 2003 was normal. (Tr. 166) On January 22, 2004, Plaintiff was diagnosed with back pain, cervilagia, and myfascial pain and was so refrain from work until his next appointment on February 12, 2004. (Tr. 174) Plaintiff underwent an MRI of his lumbar spine on January 27, 2004, which revealed mild broad-based disc bulges at L4-5 and L5-S1 without resulting spinal canal or neural foraminal stenosis and mild disc desiccation L4-5 and L5-S1. (Tr. 175)

An Independent Medical Evaluation by Dr. Tom E. Reinsel on March 15, 2004, revealed that Plaintiff's work incident probably caused his chronic back, neck and thoracic pain with radicular complaints. Dr. Reinsel also noted that Plaintiff was severely depressed. Dr. Reinsel recommended physical therapy and then a Functional Capacity Evaluation to determine Plaintiff's physical restrictions. He was optimistic that Plaintiff would be able to recover fully and return to work. He opined that Plaintiff's depression was preventing further recovery. (Tr. 178-87)

On January 19, 2005, Shawn L. Berkin, D.O., examined Plaintiff for an independent evaluation of Plaintiff's occupational injury. Plaintiff complained of pain and tenderness in his neck and lower back. He rated the degree of pain at a level 5 on a scale from 1 to 10. He also reported tightness and muscle spasms across his lower back and stated that he walked with a cane. Bending, straining, and lifting caused pain to his back and neck. Dr. Berkin's impression was cervical strain; bulging of the C4-C5 intervertebral disc; chest wall contusion; lumbosacral strain; and bulging of the L4-L5 and L5-S1 intervertebral discs. Dr. Berkin opined that the industrial accident in May 2003 which pinned down Plaintiff with 1,000 pounds of glass was a substantial factor causing strains to his neck and lower back, along with bulging discs and chest contusion. Dr. Berkin assessed a permanent partial disability of 20% of the body as a whole at the level of the cervical spine and 25% at the level

of the lumbosacral spine. He did not believe Plaintiff's status would significantly improve with further medical or surgical treatment. However, he recommended momsteroidal anti-inflammatory medication; a home exercise program; avoidance of rapid and extreme movements of the neck; avoidance of excessive squatting, kneeling, stooping, turning, twisting, climbing, and lifting; weight lifting restrictions; utilization of proper body mechanics when lifting; and frequent breaks when performing exertional activities. (Tr. 193-200)

Dr. Sivaswami evaluated Plaintiff on April 1, 2004 for complaints that his medications needed to be regulated. Dr. Sivaswami assessed fibromyalgia and chronic back pain. (Tr. 222) On May 6, 2004, Plaintiff reported severe pain in his back and spine, along with pain in his arms, legs, hips, chest, and tingling in his arms and legs. Dr. Sivaswami assessed chronic low back pain. (Tr. 221) Plaintiff returned to Dr. Sivaswami on May 27, 2004, who diagnosed back pain, etiology unclear, and mood disorder. (Tr. 220) On August 13, 2004, Plaintiff requested refills of his medication. Dr. Sivaswami assessed chronic pain and noted that he could no longer help Plaintiff. (Tr. 219)

Plaintiff returned to Dr. Sivaswami in 2005 with complaints of cold symptoms, irritated eyes, and sleep apnea. (Tr. 216-218) On July 28, 2005, Plaintiff again complained of constant pain and depressed mood. Dr. Sivaswami assessed fibromyalgia and major depression and ordered lab tests. (Tr. 215) When Plaintiff returned on August 15, 2005, he continued to complain of severe lower to middle back pain. (Tr. 214) Dr. Sivaswami treated Plaintiff for hyperlipidemia from November 2005 through February 2006. Plaintiff did not complain of back pain during these visits. (Tr. 210-213) On June 16, 2006, Plaintiff returned to Dr. Sivaswami for a check up. Plaintiff complained of suicidal thoughts. Dr. Sivaswami assessed hyperlipidemia, chronic anxiety, chronic back pain, obesity, and sleep apnea. (Tr. 209)

On July 28, 2006, Dr. Sivaswami completed a questionnaire submitted by the Social Security Administration. Dr. Sivaswami stated that Plaintiff had full flexion in his back and exhibited no joint abnormality. His muscle strength was normal, and Plaintiff was able to bear full weight. He had a slow but normal gait without assistive device. Dr. Sivaswami diagnosed subjective symptoms of back pain and body pain. A work up was negative. (Tr. 205-08)

Plaintiff underwent a psychological evaluations in May of 2006. Dr. Corral assessed adjustment disorder, fibromyalgia, and a GAF of 50. Dr. Corral recommended a follow-up appointment with Plaintiff's primary psychiatrist. (Tr. 202-04)

Plaintiff visited the ER and was admitted to the hospital on December 10, 2006, complaining of chronic back pain. He was discharged on December 12, 2006, with a diagnosis of lumbosacral spine strain; spina bifida congenital, no consequence at that time; back pain severe; allergic rhinitis history; and obstructive sleep apnea on CPAP. Dr. Ahmet B. Guler recommended that Plaintiff see physical therapy, occupational therapy, rehabilitation, and his primary care physician. Dr. Guler also advised Plaintiff to avoid nonsteroidals and tobacco. He prescribed Darvocet and Elavil. (Tr. 239-318)

In February 2007, Dr. Doumit completed a residual functional capacity questionnaire. According to Dr. Doumit, he saw Plaintiff 3 times between January and February 2007. Dr. Doumit noted that Plaintiff's symptoms included chronic fatigue, muscoskeletal pain, decreased muscle endurance, morning stiffness, polyarthalgias of the small bones of the hands, migraine or other frequent severe headaches, non-restorative sleep disturbance, irritable bladder, muscle spasm, tenderness in joints, limitation in lumbar flexion, weight gain, general weakness, difficulty walking, and limitation in joint movement. Dr. Doumit opined that Plaintiff's fatigue limited his ability to

sustain activity and that his condition adversely affected his ability to sit or stand for any length of time. Dr. Doumit did not believe that Plaintiff could engage in gainful employment on a regular reliable basis over eight hours, forty hours per week.[1] Further, Dr. Doumit identified the areas of pain as: bilateral lumbar spine; right cervical spine; bilateral chest; bilateral hands; bilateral hips; and bilateral legs. In addition, Dr. Doumit opined that Plaintiff could walk 100 feet without rest; sit continuously for 30 minutes; stand continuously for 10 minutes; and lift and carry 10 pounds. Further, Plaintiff required periods of walking throughout the day, along with an ability to shift positions and take unscheduled breaks. Plaintiff would likely miss work 3 days per month. (Tr. 319, 333-35)

A Psychological Evaluation conducted by Dr. David Peaco on March 29, 2007 revealed that Plaintiff was somewhat obese, had a noticeable limp when he walked, and walked with a cane. Plaintiff's gait and speech were slow. His mood was depressed. Plaintiff reported that he took care of his youngest child and tried to take care of the house during the day. Dr. Peaco noted that Plaintiff's persistence in tasks was very poor. Dr. Peaco diagnosed panic disorder without agoraphobia; major depression, recurring mild; fibromyalgia, chronic pain; severe stressors in the area of primary support group, financial problems, and occupational problems; and a GAF of 55. Dr. Peaco opined that Plaintiff was able to understand and remember simple instructions; however, his persistence in tasks was problematic due to chronic pain. Plaintiff's concentration was unimpaired, but his social functioning was severely impaired due to depression and anxiety. His capacity to cope with the world around him was moderately impaired due to chronic medical problems and panic

---

[1] An earlier copy of the evaluation noted Dr. Doumit's belief that Plaintiff was able to engage in substantial gainful employment. (Tr. 321)

attacks. However, if Plaintiff received supportive services, he could manage those services independently and in his best interest. (Tr. 327-29)

Plaintiff returned to Dr. Corral in June 2007, at which time Dr. Corral noted that Plaintiff took Morphine for pain. Dr. Corral assessed adjustment disorder and a GAF of 50. He again recommended psychological testing. (Tr. 331-32)

Plaintiff also submitted evidence not before the ALJ. While attending school in the Fort Zumwalt School District, Plaintiff participated in special education classes for behavioral and academic problems. (Plaintiff's Brief in Support of the Petition, Exh. 2, 5-11) Kim A. Dempsey, Psy.D., conducted a psychological evaluation of Plaintiff upon referral by Dr. Corral. Plaintiff reported depressed mood, anxiety, and irritability, along with chronic pain from a work injury in 2003. Dr. Dempsey summarized Plaintiff's assessment as follows:

> Donald Boyd is a 30-year-old, married Caucasian male, who lives with his wife and children in Wright City. He presented with symptoms of major depression, including hopelessness, suicidal thoughts, and depressed mood. He also presented with anxiety and various physical complaints. Irritability, restlessness, tension, and sleep disturbance were evident as symptoms of generalized anxiety. His anxiety and irritability may also be related to current psychosocial stressors, such as anxiety about worker's compensation claim and distress about economic problems.

(Plaintiff's Brief in Support of the Petition, Exh. 3, p. 5) Dr. Dempsey diagnosed major depressive disorder, recurrent, moderate; generalized anxiety disorder; chronic pain, bulging disk in neck, and diabetes according to the patient; moderate occupational and economic problems; and a GAF of 50. (Plaintiff's Brief in Support of the Petition, Exh. 3)

More recent treatment notes from Dr. Loon-Tzian Lo demonstrated that Plaintiff's mood was more even, although he was still angry and irritable. Dr. Lo prescribed Celexa, Depakote, and

Seroquel.  (Plaintiff's Brief in Support of the Petition, Exh. 4)

## IV.  The ALJ's Determination

In a decision dated November 8, 2007, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008.  He had not engaged in substantial gainful activity since the alleged onset date of June 11, 2003.  The ALJ further found that Plaintiff had the severe impairment of congenital lumbar spine spina bifida with bulging discs of the cervical and lumbar spine.  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Further, the ALJ determined that Plaintiff possessed the residual functional capacity ("RFC") to perform the full range of light work.  In making this determination, the ALJ assessed Plaintiff's allegations, as well as the medical evidence.  While the ALJ did not find that Plaintiff experienced no pain, the ALJ found Plaintiff's allegations of disabling pain not credible.  Thus, the ALJ determined that Plaintiff could perform work at the light level and that Plaintiff could return to his past relevant work as a glass grinder, as ordinarily performed in the national economy.  The ALJ  concluded that Plaintiff had not been under a disability at any time from June 11, 2003 through the date of the decision.  (Tr. 13-19)

## V.  Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Social Security Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. § 404.1505(a).

12

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. See 20 C.F.R. § 404.1520(b)-(f). Those steps require a claimant to show: (1) that he is not engaged in substantial gainful activity; (2) that he has a severe impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. Id.

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruse v. Chater, 85 F. 3d 1320, 1323 (8th Cir. 1996) (quoting Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993)). The Court does not re-weigh the evidence or review the record de novo. Id. at 1328 (citing Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992)). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Id. at 1320; Clark v. Chater, 75 F.3d 414, 416-17 (8th Cir. 1996).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment(s). Stewart v. Secretary of Health & Human Servs.,

957 F.2d 581, 585-586 (8th Cir. 1992); Brand v. Secretary of Health Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The ALJ may discount plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. Marciniak v. Shalala, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that he or she considered all the evidence. Id. at 1354; Ricketts v. Secretary of Health & Human Servs., 902 F.2d 661, 664 (8th Cir. 1990).

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the Court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the Polaski[2] standards and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. Marciniak 49 F.3d at 1354.

## VI.  Discussion

In his Brief in Support of the Complaint, the Plaintiff asserts that the ALJ failed to accord adequate weight to the opinion of Plaintiff's treating physician and that the ALJ erred in failing to re-contact Plaintiff's treating medical provider.  In addition, Plaintiff argues that new and material

---

[2]The Polaski factors include: (1) the objective medical evidence; (2) the subjective evidence of pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the effects of any medication; and (6) the claimants functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

evidence warrants remand. The Defendant, on the other hand, maintains that the ALJ properly evaluated the medical records and did not need to re-contact Plaintiff's doctors. Further, Defendant asserts that the additional evidence is not new and material and does not warrant remand. The undersigned agrees with Defendant that the ALJ did not err in his evaluation of the medical evidence, nor is remand to review additional evidence appropriate.

### A.  The ALJ failed to accord adequate weight to Plaintiff's treating physicians

Plaintiff first contends that the ALJ did not accord adequate weight to Plaintiff's treating physician, Dr. Doumit, or treating psychiatrist, Dr. Corral. "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). However, "an ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." Holstrom v. Massanari, 270 F.3d 715, 720 (8th Cir. 2001) (citation omitted). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." Swarnes v. Astrue, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted).

In the instant case, Plaintiff has failed to demonstrate that Drs. Doumit and Corral were Plaintiff's treating physician and psychiatrist, respectively. The regulations define "treating source" as: "[claimant's] own physician, psychologist, or other acceptable medical source who provides [him], or has provided [him], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [him]." 20 C.F.R. §§ 404.1502, 416.902. The ALJ may consider as a

treating source a physician who has evaluated a claimant only a few times if the nature and frequency is typical of the claimant's condition.  Id.  However, the ALJ "will not consider an acceptable medical source to be [claimant's] treating source if [his] relationship with the source is not based on [his] medical need for treatment or evaluation, but solely on [his] need to obtain a report in support of [his] claim for disability.  In such a case, [the ALJ] will consider the acceptable medical source to be a nontreating source."  Id.

Here, Plaintiff saw Dr. Doumit only three times in the course of one month, after which Dr. Doumit first concluded that Plaintiff could work, then submitted a "corrected" version reflecting an opinion that Plaintiff could not work.  Nothing in the record demonstrates an ongoing relationship with Dr. Doumit.  The same is true for Dr. Corral, who evaluated Plaintiff only twice prior to the ALJ's determination, and the examinations were a year apart.  Again, Plaintiff has not demonstrated that he had an ongoing relationship with Dr. Corral.  Thus, the ALJ was not obligated to give these doctors substantial weight.

However, even if these doctors were "treating sources," the ALJ adequately discounted their opinions based on the fact that their opinions are inconsistent with the record as a whole.  With regard to Dr. Doumit, the record contains only Dr. Doumit's conclusory opinion regarding Plaintiff's Residual Functional Capacity with no objective medical support.  As properly stated by the ALJ, Dr. Doumit's conclusion "is not supported by appropriate medical findings or the preponderance of the evidence of record."  (Tr. 17)  Thus, contrary to Plaintiff's assertion, the ALJ was not obligated to give substantial weight to Dr. Doumit, and, instead, the ALJ appropriately gave little weight to Dr. Doumit's vague and conclusory statements.  Swarnes v. Astrue, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted).

Likewise, the ALJ properly discounted the opinion of Dr. Corral, who examined Plaintiff on only two occasions in May of 2006 and June of 2007. After both examinations, Dr. Corral recommended further psychological testing and a follow-up with Plaintiff's primary psychiatrist. Plaintiff did not follow these instructions until after the ALJ rendered his opinion. Further, Dr. Corral merely diagnosed an "adjustment disorder." While he assessed a GAF of 50,[3] the ALJ correctly points out that Plaintiff had not undergone any treatment or testing for his alleged emotional condition. The opinions of Dr. Corral are not based on psychological testing but merely conclusory opinions. See Randolph v. Barnhart, 386 F.3d 835, 840 (8th Cir. 2004) (refusing to give controlling weight to psychologist's opinion where treatment notes failed to indicate that the doctor had sufficient knowledge upon which to formulate an opinion regarding plaintiff's ability to function in the workplace). In addition, as noted by the ALJ, the record failed to demonstrate that Plaintiff had any emotional impairment with more than a minimal effect on his ability to work for any continuous period of 12 months. (Tr. 17-18) Thus, the ALJ was not obligated to give substantial weight to these opinions regarding Plaintiff's alleged mental impairments.[4] Id.

### B. The ALJ erred in failing to re-contact Plaintiff's treating medical provider

Plaintiff next contends that the ALJ erred in failing to re-contact Plaintiff's treating medical

---

[3] A GAF of 41 to 50 indicates "Serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).

[4] The undersigned also notes that Plaintiff did not allege mental impairments as a basis for his disability claims in either his applications or subsequent questionnaires. (Tr. 45-46, 54, 102-116, 133-39) "The fact that [Plaintiff] did not allege depression in [his] application for disability benefits is significant, even if the evidence of depression was later developed." Dunahoo v. Apfel, 241 F.3d 1033, 1039 (8th Cir. 2001) (citation omitted).

providers, Drs. Doumit and Corral. The undersigned disagrees. As previously stated, the Plaintiff has not established that these doctors are "treating sources." Even if these doctors were treating physicians, although the ALJ has a duty to fully and fairly develop the record, the ALJ is required to do so only where the medical evidence is insufficient to determine whether the Plaintiff is disabled. Barrett v. Shalala, 38 F.3d 1019, 1023 (8th Cir. 1994). Stated another way, the ALJ is not required "'to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)). Under the regulations, "contacting a treating physician is necessary only if the doctor's records are 'inadequate for us to determine whether [the claimant is] disabled' such as 'when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" Id. (quoting 20 C.F.R. §§ 404.1512(e), 416.912(e)).

In the instant case, the ALJ did not need to contact Drs. Doumit and Corral, as he properly discounted their opinions based on inconsistencies in the record. Contrary to Plaintiff's position, the ALJ did not find the records inadequate, unclear, or incomplete. Further, the ALJ did not find that the doctors used unacceptable clinical and laboratory techniques. Instead, the ALJ properly discounted the opinions because they were inconsistent with other substantial evidence in the record. "In such cases, an ALJ may discount an opinion without seeking clarification." Id.

The record demonstrates that Plaintiff saw Dr. Sivaswami frequently between April 2004 and July 2006. As stated by the ALJ, the most recent examination was negative with no instability of any joint. (Tr. 209) In addition, the psychological evaluation conducted by Dr. Peaco demonstrated an

ability to understand and remember simple instructions and concentrate, although Plaintiff was severely impaired in social functioning. Dr. Peaco assessed a GAF of 55, indicating only moderate symptoms.[5] Further, given Plaintiff's failure to seek ongoing treatment for alleged mental impairments, the ALJ was justified in finding Plaintiff's depression not disabling. See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) ("[t]he absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in [plaintiff's] mental capabilities disfavors a finding of disability"). Therefore, because the opinions of Drs. Doumit and Corral are inconsistent with the other substantial evidence, the ALJ did not need to contact them for further clarification.

## C. New and material evidence

Finally, the Plaintiff argues that the case should be remanded for the ALJ to consider evidence which is new, material, substantial, and unavailable at the time the ALJ rendered his decision. The undersigned disagrees.

"Section 405(g) generally precludes consideration on review of evidence outside the record before the Commissioner during the administrative proceedings." Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997) (citation omitted). However, "[t]he district court may remand a case to have additional evidence taken 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" Hepp v. Astrue, 511, F.3d 798, 808 (8th Cir. 2008) (quoting 42 U.S.C. § 405(g)). New evidence is material where it is "'non-cumulative, relevant, and probative of the claimant's

---

[5] A GAF score of 51 to 60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. 2000).

condition for the time period for which benefits were denied.'" Id. (quoting Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997)). Further, "[g]ood cause does not exist when the claimant had the opportunity to obtain the new evidence before the administrative record closed but failed to do so without providing sufficient explanation." Id.

Plaintiff makes no attempt to demonstrate that the school records, psychiatric evaluation by Dr. Dempsey, and evaluation by Dr. Lo are material or that he had good cause for failing to incorporate such evidence into the record. The school records from 1990-1996 were available during the prior proceedings. With regard to Dr. Dempsey's evaluation and the evaluations by Dr. Lo, the ALJ gave Plaintiff 30 days to submit a report, noting that he would not consider anything after 30 days. Plaintiff first submitted this evidence in his federal cause of action and provides no reason for the delay. See Hepp, 511 F.3d at 808 ("Because [plaintiff] does not provide an explanation for failing to obtain the information before the record closed, he has not established good cause for not incorporating the evidence into the record in the prior proceedings.").

Further, the undersigned finds that the school records are not relevant or probative of Plaintiff's allegedly disabling condition stemming from an accident that occurred in 2003. In addition, the evaluation by Dr. Dempsey and Dr. Lo are cumulative of other evidence in the record. With regard to Dr. Dempsey's opinion, the undersigned questions whether that opinion relates to the relevant time period. Further, Plaintiff had ample opportunity to obtain a psychological evaluation, as Dr. Corral had recommended such on two prior occasions. Therefore, the undersigned will deny Plaintiff's motion to remand to submit additional evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits be **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.


                                         /s/ Terry I. Adelman
                         UNITED STATES MAGISTRATE JUDGE

Dated this  29th  day of September, 2009.